**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**ASBURY MS GRAY-DANIELS, L.L.C.,
a Delaware limited liability company;
and ASBURY AUTOMOTIVE ARKANSAS,
L.L.C., a Delaware limited liability company**                    **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 3:11-CV-28 HTW-LRA**

**NOEL E. DANIELS, an individual; JOE M.
USRY, JR., an individual; and USRY
ENTERPRISES, L.L.C. d/b/a JOE USRY
CHRYSLER JEEP DODGE, a Mississippi
corporation**                                    **DEFENDANTS**

## ORDER GRANTING PRELIMINARY INJUNCTION

Before this court is the motion of plaintiffs Asbury MS Gray-Daniels, L.L.C. and

Asbury Automotive Arkansas, L.L.C., for a temporary restraining order, preliminary

injunction and permanent injunction [docket no. 3].  Plaintiffs filed said motion pursuant

to Fed. R. Civ. P. 65.[1]

---

[1] Fed. R. Civ. P. 65(a)(1) states in pertinent part that:

the court may issue a preliminary injunction only on notice to the adverse party.

Rule 65(b)(1) provides:

The court may issue a temporary restraining order without written or oral notice
to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate
and irreparable injury, loss, or damage will result to the movant before the adverse
party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and the

The interrogatory for resolution owes its existence to the sale and purchase of a car dealership, a concomitant asset purchase agreement with a non-competition clause, and a difference of opinion whether that provision has been violated.  This skeletal overview is incomplete without identification of the principals: Asbury Automotive Arkansas, L.L.C.; Asbury MS Gray-Daniels, L.L.C.; Robert E. Gray; Steven M. Inzinna; Noel E. Daniels; and Joe M. Usry, Jr., of Usry Enterprises, L.L.C., d/b/a Joe Usry Chrysler Jeep Dodge.

Plaintiff Asbury Automotive Arkansas, L.L.C. bought a car dealership sold by Robert E. Gray, Steven M. Inzinna, and defendant Noel E. Daniels pursuant to an Asset Purchase Agreement, which contained a non-competition provision [docket no. 1-2]. Daniels left employment with plaintiff Asbury MS Gray-Daniels, L.L.C. and soon thereafter began working for defendant Joe M. Usry, Jr., at Usry Enterprises, L.L.C. d/b/a Joe Usry Chrysler Jeep Dodge. Plaintiffs ask this court to find that Daniels has violated the non-competition provision of the Asset Purchase Agreement and to require Daniels and the other defendants to act in compliance with that provision. Upon due consideration, this court finds that the motion should be granted.

### I. Relevant Factual Findings

On April 4, 2001, Brandon Ford, Inc. d/b/a Gray-Daniels Ford ("Gray-Daniels"), along with its principals, Robert E. Gray, Noel E. Daniels, and Steven M. Inzinna ("the sellers"), entered into an Asset Purchase Agreement ("APA") with Asbury Automotive

---

reasons why it should not be required.

Arkansas, L.L.C. ("Asbury Arkansas") by which Asbury Arkansas purchased the Ford dealership known as Gray-Daniels Ford located in Brandon, Mississippi. Daniels remained employed by Asbury MS Gray-Daniels, L.L.C. ("Asbury MS") at Gray-Daniels until he terminated his employment there in late November 2010. By December 1, 2010, Daniels had begun employment with Joe Usry at Usry Enterprises, L.L.C. d/b/a Joe Usry Chrysler Jeep Dodge ("Usry dealership") in Jackson, Mississippi.

Plaintiffs Asbury MS and Asbury Arkansas allege that Daniels' ongoing employment with the Usry dealership violates the non-competition clause in Section 11.11 of the APA, which states:

> (a) As a material inducement to the Buyer's execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, each of the Sellers agrees not to directly or indirectly engage in, or have any ownership interest in any firm, corporation, partnership, proprietorship or other entity that engages (directly or indirectly) in any activities which are the same as, or in competition with, the business and activities carried on by the Buyer or its Affiliates or being planned by the Buyer or its Affiliates on the Closing Date, within a fifty (50) mile radius of the Dealership's location at 201 Octavia Drive, Brandon, Mississippi. . .

. . . .

> (d) The. . . restrictions set forth in [subsection 11.11(a)] shall. . . . in the case of Daniels, continue until the longer of (i) the fifth (5th) anniversary of the Closing Date or (ii) one (1) year from the termination (for any reason) of such Principal's employment with the Buyer or its Affiliates. . .

All parties agree that: (1) the Usry dealership is within fifty miles of Gray-Daniels; (2) Daniels' business activity with the Usry dealership began within one year of his termination of employment with Gray-Daniels; and (3) Daniels' activity with the Usry dealership is ongoing.

Based on Daniels' alleged violation of the non-competition clause in the APA,

plaintiffs filed suit in this court on January 18, 2001. Plaintiffs have brought the following causes of action: breach of contract, unfair competition pursuant to both the Lanham Act, Title 15 U.S.C. §§ 1051 *et seq.* and Mississippi common law;[2,3] trademark

---

[2] Plaintiff alleges trademark dilution in violation of Title 15 U.S.C. § 1114(1) which states:

1)  Any person who shall, without the consent of the registrant--

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

[3] Plaintiffs claim false designation of origin and dilution under Title 15 U.S.C. § 1125, which states in pertinent part:

(a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
. . . .

4

infringement pursuant to Mississippi common law; interference with contract and business relationships; and unjust enrichment.[4] This court finds that it has jurisdiction pursuant to Title 28 U.S.C. §§ 1331,[5] 1332,[6] 1338(a) and (b),[7] and 1367(a).[8]

---

(c)(1) Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

[4]Plaintiffs also base the claims in their complaint on violation of the non-competition clause in the July 1, 2001 Employment Agreement [docket no. 1-3] between Asbury MS and Daniels. Plaintiffs have stated several times that they are not seeking relief for violation of that agreement for the purpose of this motion.

[5] Title 28 U.S.C. § 1331 states:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[6] Title 28 U.S.C. § 1332 states in pertinent part:

(a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
    (1) citizens of different States. . .

[7] Title 28 U.S.C. § 1338 states in pertinent part:

(a)  The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.

[8] Title 28 U.S.C. § 1367(a):

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original

## II.  Standard

Plaintiffs served defendants with their motion for injunctive relief as evidenced by a certificate of service therein [docket no. 3] , and this court has held hearings, allowing arguments and presentation of evidence, on four occasions. Because defendants have received notice and all parties have been heard, the court will treat this motion as one for a preliminary injunction.

A preliminary injunction should issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010). The plaintiff bears the burden of establishing each element. *Id.*

This court has examined the four factors to determine the propriety of issuing a preliminary injunction and finds the factors weigh in favor of issuance. This court emphasizes that its ruling on plaintiffs' request for preliminary injunctive relief is not to be construed as a determination on the merits of this case.

## III. Propriety of an Injunction

## A. Substantial Likelihood of Success on the Merits

In order to satisfy the first element, likelihood of success on the merits, plaintiffs

---

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

must provide evidence sufficient to support a prima facie case, but the evidentiary standard is not as high as would be required to entitle them to summary judgment. *Janvey*, 628 F.3d at 175 (citation omitted). To assess the likelihood of success on the merits, this court looks to "standards provided by the substantive law." *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990) (citing *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985) ("To evaluate the plaintiff's likelihood of success we determine what is the proper standard to be applied in evaluating plaintiff's claims, and then we apply that standard to the facts presented in the record.")).

Plaintiffs rely on a contract theory for preliminary injunctive relief. Thus, in order to determine plaintiffs' likelihood of success under a contract theory, this court has to look at the APA non-compete clause under the standards provided by the substantive law. This court must first determine which state's contract law to apply – the law of the forum state, Mississippi, or the law of the state named in the choice of law provision of the APA, New York.[9]

**1. Choice of Law Analysis**

The APA prohibits Daniels from working with a competing dealership within particular temporal and geographic confines. The APA contains a clause concerning modification.  Section 14.1 of the APA [docket no. 1-2] states:

---

[9]Section 14.9 of the APA [docket no. 1-2] states:

<u>Governing Law</u>. All questions relating to the validity, construction and interpretation of this Agreement shall be governed by and construed in accordance with the laws of the State of New York, and without the aid of any rule or custom requiring construction against the draftsman.

> Entire Agreement; Amendment. This Agreement and the Purchase Documents contain the entire agreement of the parties hereto with respect to the transaction described therein, and no representation, warranty, inducement, agreement, promise or understanding which alters, modifies, limits or adds to the terms or conditions of this Agreement or the Purchase Documents shall have any force or effect unless the same is in writing and executed by both the Buyer and the Sellers. This Agreement may only be amended by a writing signed by the Buyer and the Company, the Sellers and the Sellers' Representatives.

The parties dispute whether the APA was modified by subsequent employment agreements and oral representations of one of plaintiffs' officers[10] that nullified the non-compete clause. The resolution of this dispute is affected by which law will be applied to the APA.

> New York law states:

> A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

NY CLS GEN OBLIG § 15-301(1). Under New York law there are few exceptions to overcome this requirement of a writing. *In re: Hirschhorn*, 156 B.R. 379, 386 (Bankr. E.D.N.Y. 1993). Mississippi law, on the other hand, recognizes that a contractual clause requiring a writing for modification may be waived by the subsequent conduct of the

---

[10]The defendants allege that Robert Gray made oral representations to Daniels suggesting he was released from the non-competition provision of the APA. Gray's exact position with Asbury is unclear. The Asbury plaintiffs referred to Robert Gray as one of its officers during the January 21, 2011 hearing. (hearing transcript, p.8). At the January 24, 2011 hearing, Asbury MS said Gray acted as administrator of Asbury MS. (hearing transcript, p.4). Gray signed as CEO a 2002 letter with Asbury Automotive Group on the letterhead offering employment to Gray. (hearing exhibit D-1). Gray clarified, however, that he is not the CEO of Asbury Automotive Group. (transcript, p.31, lines 17-18). It is apparent that Gray acts in some administrative capacity for one of the Asbury plaintiffs at Gray-Daniels and did so during Daniels' employment with Gray-Daniels.

parties. *See Canizaro v. Mobile Comm. Corp. Of America*, 655 So.2d 25 (Miss. 1995).

A district court hearing a diversity suit shall apply the choice-of-law rules of the state in which the action is brought. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994) (internal citation omitted). Mississippi, the forum state for this case, recognizes that parties may legitimately control the choice of substantive law in a contract dispute as long as the state law selected bears a "reasonable relation" to the transaction. *Sorrels Steel Co. v. Great Southwest* Corp., 906 F.2d 158, 167 (5th Cir. Miss. 1990). *See also* Miss Code Ann. § 75-1-301(a) ("when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.")

At the court's request, the parties submitted additional arguments and authority on the choice of law issue. Defendants argue in their submission that the choice of law provision in the APA should not apply because there is not a reasonable relationship between the parties and New York since the resident parties reside and work in Mississippi; the only corporate defendant is a Mississippi Corporation; and Asbury MS is a Delaware corporation that owns dealerships here.[11] Defendants further note that the facts at issue, i.e., violation of plaintiffs' rights, all occurred in Mississippi.

Essentially, defendants argue, Mississippi has more contacts with this case. Whether Mississippi has more contacts than New York with the matter is not decisive.

---

[11]Regarding Asbury Arkansas, defendants only state that it is a Delaware corporation and that it owns numerous car dealerships only in Arkansas. (Defendant's Response to Choice of Law Issues, January 25, 2011).

When the parties have contracted to litigate under a certain state's law, that choice will not be disturbed simply because the forum state has more significant contacts with the transaction. *See Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co.*, 642 F.2d 744, 749-50 (5th Cir. 1981) (The Fifth Circuit found that the law of Mississippi, the state designated in the choice-of-law provision should be applied instead of the law of Texas, the forum state, despite the fact that "[t]he Mississippi contacts with the transaction [were] not as substantial")."[T]he parties' choice should be upheld unless the transaction lacks a normal connection with the state whose law was selected." *Id.* at 751. [T]he 'reasonable relation' test. . . limits party autonomy in the choice of law only to the extent that it forbids them to select the law of a jurisdiction that has "no normal relation to the transaction." *Woods-Tucker*, 642 F.2d at 750-51. The relationship should only be held to be unreasonable "when it is shown that the contact did not occur in the normal course of the transaction, but was contrived to validate the parties' choice of law." *Id.* at 751. The reasonable relation test is a more lenient standard than the due process minimum contact test. *Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc.*, 809 F. Supp. 450, 453 (S.D. Miss. 1992).

The question, then, is whether the APA is sufficiently connected to New York to satisfy the reasonable relation test.  At this court's order directing affidavits for more information on this question [docket no. 11], plaintiffs filed the affidavit of Edward McGinty [docket no. 12], Asbury Automotive Group's director of market representation. McGinty worked at Asbury Automotive Group's headquarters during the negotiations of the APA. His affidavit attests to the following facts.

Asbury Automotive Group, L.L.C. ("Asbury Automotive") is the parent company

10

of Asbury Arkansas. At the time of the negotiations of the APA, Asbury Automotive was headquartered in Stamford Connecticut, but its operations were controlled from the offices of the majority owners, Ripplewood Holdings, in New York, New York. Principals at Ripplewood Holdings served as Asbury Automotive's Board of Directors. Asbury Automotive's Board of Directors participated in the negotiations and had final authority to approve or reject the acquisition of Gray-Daniels and the APA from their offices in New York, New York. Most of the negotiations over the APA took place at Ripplewood Holdings' offices in New York, New York, or at the offices of Asbury Automotive's attorneys, also located in New York. The APA was drafted, reviewed and revised by Asbury Automotive's New York's attorneys at the firms of Debevoise & Plimpton, LLP and Cravath, Swaine, and Moore, LLP from their offices in New York, New York. The Asbury Automotive Board of Directors approved the purchase of Gray-Daniels and the terms of the APA in a board meeting in the State of New York. At that meeting, Asbury Automotive approved the $2,200,000.00 payment that was made to Daniels as consideration for the APA.

The defendants respond that Asbury Automotive is neither a party to this action nor a party to the APA. While these assertions are consistent with the record before this court, they do not negate plaintiffs' representations that: (1) Asbury Automotive is the parent company of Asbury Arkansas, a party to this action and to the APA, and (2) Asbury Automotive, as the parent company of Asbury Arkansas, made significant decisions concerning the APA, including its terms and final approval.

Consistent with the application of the reasonable relation test in this circuit and district, the contacts between the APA and New York constitute a reasonable relation.

11

The Fifth Circuit and this district have both previously found a reasonable relation in consideration of facts similar to those before the court. *See, e.g.*, *Woods*, 642 F.2d 744 (The Fifth Circuit determined that there was a reasonable relation to Mississippi, the state designated in the choice-of-law provision in a loan agreement, when it was the state where: the home offices of the appellant lender were located, the documents comprising the loan agreement at issue were executed, and the appellee borrower sent its initial monthly payments) and *Superfos*, 809 F. Supp. at 452-53 (This court, applying Miss. Code Ann. § 75-1-105, concluded that a reasonable relation existed where, inter alia, one party negotiated the contract and received payment as directed by the contract at a bank account in the state designated in the choice-of-law provision).

The defendants also argue that even if there is a reasonable relation between New York and the transaction, the court should apply Mississippi law because imposition of New York law would violate Mississippi public policy by enforcing an ambiguous restrictive covenant.  The Mississippi Supreme Court has held that it will not apply the substantive laws of another jurisdiction when to do so would be "contrary to the deeply ingrained and strongly felt public policy" of Mississippi. *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985).

The defendants cite *Kennedy v. Metro. Life Ins. Co.*, 759 So.2d 362 (Miss. 2000). In *Kennedy*, the Mississippi Supreme Court refused to enforce a non-compete provision against a former employee, who left to work for a competitor, because of evidence that the employee made a good faith effort to comply with the provision, but failed because of the ambiguity in the contract language. *Id* at 367. The court found that

12

the language of the non-compete provision was ambiguous, "subject to differing interpretations" concerning what the employee could do after separation from the employer. *Id.* The court held that "[g]iven the unfavored status of non-competition agreements in the eyes of the law, the burden properly falls on the employer to draft a non-competition agreement which clearly delineates the scope of the employee's permissible business activities following the termination of employment." *Id.* at 367-68.

Unlike the disputed agreement in *Kennedy*, the language of the APA does not put Daniels in "a very uncertain position," *Kennedy*, 759 So. 2d at 367, as to whether he is violating the agreement. The language of the APA prohibits Daniels from competing with Gray-Daniels within a fifty mile radius of the Brandon Gray-Daniels dealership for whichever period is longer: (1) "the fifth (5th) anniversary of the Closing Date" or (2) "one (1) year from the termination (for any reason) of such Principal's employment." (APA, Sections 11.11 (a) and (d)). This language is clear. It bars Noel Daniels from competing directly with Gray-Daniels within a specific geographic region and for a specific duration of time. This court finds no merit in defendants' argument that enforcement of the APA would violate Mississippi public policy. *Kennedy*, 759 So.2d at 366 ("courts have often enforced non-competition agreements which clearly prohibit an employee from practicing his trade at all within a given geographical area for a specified period.") Accordingly, this court will apply New York law in determining whether plaintiffs have a substantial likelihood of success concerning their contract theory under the APA.

**B. Likelihood of Success Analysis**

As mentioned previously, Daniels was restricted by the APA from competing, i.e.,

acting in association with a car dealership, within fifty (50) miles from Gray-Daniels within one (1) year from his termination. After ending his employment with Gray-Daniels in late November, within weeks, at most, Daniels began to work for the Usry dealership located within fifty miles of Gray-Daniels.

Plaintiffs have made two arguments suggesting that plaintiffs will not be successful as to its breach of contract claim. The first argument is that Gray orally released Daniels from the non-competition provision in the APA or waived Asbury's right to enforce the non-competition provision in the APA. There are several problems with this argument. As mentioned above, New York law states that written agreements barring oral modification, such as the APA, can only be modified by written agreements. Thus, Gray's alleged oral modification was insufficient. Further, Gray testified that he did not know he or Daniels was still under the restrictions of the APA. (January 21, 2011, transcript, pp.28-29). "Under New York law, a claim of waiver requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 482 (2d Cir. 2004) (citation and internal quotation marks omitted). Clearly, Gray had no knowledge of an effective right to enforce the non-competition agreement; therefore, he could not have intended to waive that right on behalf of Asbury.

The defendants also argue that a March 8, 2002 letter [docket no. 13-3] nullified the non-competition provision in the APA. The letter, executed subsequent to the APA, was signed by Gray as CEO and by Daniels as an employee. The letter contains no restriction on competition but offers a change in terms of employment for Daniels, including salary, vacation, bonuses and the like. The defendants argue that the March

14

8, 2002, agreement changes the restrictions and benefits of Daniels' employment and thereby change the APA. This argument is problematic. The March 8, 2002, letter states that it is "an offer of employment only" and not a contract of employment. Whether the letter, according to its own terms, is binding is questionable. Moreover, the letter does not mention or contradict the APA. The letter does not expressly or impliedly affect the APA. The APA does not contain employment terms. The APA contains the terms of the purchase of Gray-Daniels.  The terms in the March 8, 2002, "offer of employment" do not change or affect in any way the consideration given to Daniels in exchange for his agreement not to compete with Gray-Daniels for the temporal and geographic boundaries to which he agreed in the APA.

The plaintiffs are likely to succeed in the face of the defendants' contention that oral and written agreements made subsequent to the APA nullified the non-competition provision in the APA. The defendants have presented this court with no evidence to support their argument that the non-competition provision in the APA is not effective. This court finds that the non-competition clause is clear, effective, and reasonable[12] and has been violated. It is undisputed that Daniels began employment with a competitor of Gray-Daniels within fifty miles of the dealership within one year of termination of his employment at Gray-Daniels. Therefore, this factor favors issuing a preliminary injunction.

---

[12]"The issue of whether a restrictive covenant not to compete is enforceable by way of an injunction depends in the first place upon whether the covenant is reasonable in time and geographic area." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).

**B. Irreparable Harm**

In order for plaintiffs to be granted preliminary injunctive relief they must show a substantial threat that they would suffer irreparable injury if an injunction is not granted. In order to meet the burden of showing irreparable injury if not awarded an injunction, plaintiffs need to establish that they are under a substantial threat of harm which cannot be undone through monetary remedies. *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). A showing of speculative injury is not sufficient; there must be more than an unfounded fear on the part of the movant. *Janvey v. Alguire*, 628 F.3d 164 (5th Cir. 2010).

For several reasons this court is satisfied that irreparable harm has been shown. First, plaintiffs claim damages such as loss of business and customer goodwill, which are very difficult, if not impossible, to calculate and remedy in terms of monetary damages. The indeterminate amount of business lost due to an employee who breaches a non-competition covenant can be grounds for the court to assume irreparable injury. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). Also, a loss of prospective goodwill can constitute irreparable harm. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995).

The threat of Irreparable injury is also suggested by the agreement of the parties that a breach of the APA would constitute irreparable injury. Section 11.11(e) of the APA states that:

> Each of the Sellers acknowledge that the restrictions contained in this Section 11.11 are reasonable and necessary to protect the legitimate interests of the Buyer or its Affiliates, and that any violation of this Section 11.11 will result in irreparable injury to the Buyer or its Affiliates that money

16

damages would not provide an adequate remedy to the Buyer or its Affiliates, and, therefore, the Buyer or its Affiliates shall (notwithstanding any arbitration or mediation provision set forth in this Agreement) be entitled to preliminary and permanent injunctive relief in any court of competent jurisdiction. . .

The agreement sought to be enforced concedes that in the event of Daniels' breach of the APA, Asbury plaintiffs shall be entitled to injunctive relief because the breach would constitute irreparable injury for which money would not provide an adequate remedy. Daniels, as signatory to the APA, has admitted that violation of the non-competition provision of the APA will cause irreparable harm to the Asbury plaintiffs. *See Ticor Title*, 173 F.3d at 69 (concession in an agreement  that in the event of breach of a non-compete provision, the non-breaching party shall be entitled to injunctive relief because the breach would cause irreparable injury can be viewed as an admission by the breaching party that the other party will suffer irreparable harm as a result of the breach).

Another consideration is the admission of both parties that Daniels has a special advertising skill and that his persona is a unique and highly effective car sales mechanism. According to Gray-Daniels and Usry, each dealership employed Daniels' primarily for his persona. New York law refers to such an attribute as a "unique service." The Second Circuit, applying New York law, has stated:

> Services that are not simply of value to the employer, but that may also truly be said to be special, unique or extraordinary may entitle an employer to injunctive relief. An injunction may be used to bar such person from working elsewhere.  If the unique services of such employee are available to a competitor, the employer obviously suffers irreparable harm.

> Unique services have been found in various categories of employment where the services are dependent on an employee's special talents, such categories include musicians, professional athletes, actors and the like. In those kinds of cases injunctive relief has been available to prevent the

breach of an employment contract where the individual performer has such ability and reputation that his or her place may not easily be filled. . . . where services are unique the issuance of an injunction is not an open question. . .

*Ticor Title*, 173 F.3d at 70-71 (internal citations and quotation marks omitted).

For these reasons, this court is persuaded that the factor of irreparable harm weighs in favor of ordering a preliminary injunction.

## C. Harm to the Plaintiff Versus Harm to the Defendant

The threat of injury to the Asbury plaintiffs clearly outweighs the threat of injury that injunctive relief may cause the defendants. Plaintiffs' threat of injury includes loss of goodwill and loss of sales. By contrast, granting injunctive relief against the defendants will solely require them to abide by the terms of Daniels' agreement; that is, for a one year period, Daniels may not work with a car dealership within fifty miles of Gray-Daniels, including the Usry dealership. With an injunction in place, Daniels may still earn a living by using his persona to sell cars, and Usry and the Usry dealership can still sell cars. They would simply be required to do so under the terms to which Daniels agreed.

Requiring the defendants to comply with the non-competition provision during the pendency of resolution of the merits of this case will possibly delay the business development efforts of the Usry dealership. On the other hand, if Daniels is allowed to continue advertising for the Usry dealership in competition with Gray-Daniels, Daniels will be allowed to retain the full benefit of the APA, the $2,200,000.00 payment that was made to Daniels as consideration for abiding by the APA, while depriving plaintiffs of part of the benefit for which they paid. As such, this court finds that the threat of injury

18

the plaintiffs face outweighs the threat of injury to the defendants. This factor, too, weighs in favor of issuing a preliminary injunction.

## D. Public Interest

This court finds the public interest is served by granting a preliminary injunction. The public has an interest in ensuring that parties uphold valid contractual agreements entered into voluntarily and knowingly. Thus, this last factor also favors granting a preliminary injunction.

## IV.  Conclusion

For the foregoing reasons, the plaintiffs' motion for preliminary injunction [docket no. 3] is granted.

IT IS THEREFORE ORDERED AND ADJUDGED that:

(1) Noel Daniels is enjoined from competing with Gray-Daniels in any way, including, engaging in or having any ownership interest in, selling for, marketing for, consulting for, or providing funding for, or otherwise aiding and/or contributing in any way to a car dealership or car business, including Usry Enterprises d/b/a Joe Usry Chrysler Jeep Dodge, located within fifty (50) miles of 201 Octavia Dr., Brandon, Mississippi until one (1) year from the date of entry of the injunction, all consistent with the terms and conditions of the Asset Purchase Agreement and Employment Agreement;[13]

---

[13]The defendants request that this court apply the "blue pencil rule" and modify the temporal limitation for competition to one (1) year from the date of employment or six (6) months from the court's order. This court declines to review the unpublished case the defendants cite as it is not considered either mandatory or persuasive authority. The defendants also cite two published cases, *Alside Div. of Associated Materials Inc. v. Leclair*, 295 A.D.2d 873, 874 (N.Y. 3d Dep't 2002) and *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 277 (E.D.N.Y. 2002). Neither case supports the defendants' argument.

*Alside* and *Unisource* both suggest that limitation of a non-competition covenant is appropriate when the limitation is unreasonable or greater than necessary to prevent the likely irreparable injury. *Unisource* explains that "[i]f a court finds a limitation to be unreasonable, it can 'blue pencil' the covenant to restrict the term to a reasonable geographic limitation, and grant partial enforcement for the overly broad restrictive covenant." 196 F. Supp. 2d at 277. As mentioned above, under New York law, when a party to a non-competition provision stating that

(2) Joe Usry, Jr., and Usry Enterprises d/b/a Joe Usry Chrysler Jeep Dodge are enjoined from employing Noel Daniels in any manner, or from receiving marketing or financial assistance from Noel Daniels or any business affiliated with Noel Daniels until one (1) year from the date of entry of the order of injunction;

(3) Noel Daniels, Joe Usry, Jr., and Usry Enterprises d/b/a Joe Usry Chrysler Jeep Dodge are enjoined from marketing or advertising regarding Noel Daniels' employment or affiliation with any car dealership or car business, including Usry Enterprises d/b/a Joe Usry Chrysler Jeep Dodge, within fifty (50) miles of 201 Octavia Dr., Brandon, Mississippi until one (1) year from the date of entry of the order of injunction; and

(4) Noel Daniels, Joe Usry, Jr., and Usry Enterprises d/b/a Joe Usry Chrysler Jeep Dodge shall discontinue the use of, deliver to Gray-Daniels or destroy any and all devices, literature, advertising, goods and other materials associated with marketing in defendants' possession referencing or in any way related to Noel Daniels' employment or affiliation with any car dealership or car business, including Usry Enterprises d/b/a Joe Usry Chrysler Jeep Dodge, within fifty (50) miles of 201 Octavia Dr., Brandon, Mississippi.

Plaintiffs request costs pursuant to the Indemnification Provision in the APA which essentially provides that if one of the sellers, here Daniels, breaches the APA, he will indemnify the buyers, the Asbury plaintiffs, for damages incurred as a result of his breach.[14] Costs, expenses and attorney's fees in association with the motion before the

---

breach is an irreparable injury breaches the provision, the breaching party is assumed to agree with the provision. The provision at issue says such and also says that the terms of the restrictions in the non-competition provision are reasonable and necessary. Applying New York law, this court finds Daniels has conceded, as a signatory to the APA, that a one-year limitation on competition is reasonable and necessary as 11.11(e) of the APA states. Considering Daniels' concession and this court's previous finding that the terms were reasonable, this court finds no need to apply the blue pencil rule to modify the provision at issue.

[14]Section 12.1 reads:

Sellers' Indemnification. The Sellers hereby jointly and severally agree to defend, indemnify, and hold the Buyer, its Affiliates and their respective officers, directors, employees, agents and their respective successors and assigns ("Sellers' Indemnitees") harmless against any and all Damages incurred or sustained by a Sellers' Indemnitee as a result of:

court are awarded to plaintiffs in an amount to be determined after plaintiffs submit a detailed bill of costs and this court subsequently determines whether a hearing is necessary in order to calculate the amount to be awarded.[15]

SO ORDERED, this the 22nd day of August, 2011.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

CIVIL ACTION NO. 3:11-CV-28 HTW-LRA
Order Granting Preliminary Injunction

---

. . . .

(b) any breach of any covenant or agreement of the Sellers contained in this Agreement of the Purchase Documents. . .

[15]Attorney's fees are only awarded under Mississippi law when provided for by contract or statute. *Huggins v. Wright*, 774 So. 2d 408, 412 (Miss. 2000) (citation omitted).